June 26th, 1905.

————o————

## No. 3661.

(Court of Appeal, Parish of Orleans.)

## STATE EX REL MISS E. GRAFF vs. N. O. LIGHTING CO., LESSEE.

Appeal from Civil District Court, Division "D."

Theodore Cotonio, for Relatrix and Appellant.

Buck, Walshe and Buck, for Respondent and Appellee.

1. The respondent, a *quasi-public* corporation, holding a franchise giving it the exclusive right to vend gas, and compelling it to furnish the same to all parties contracting for it, has the right to protect itself by reasonable stipulations in its contract, but it must at the same time, have due regard for the rights and convenience of the consumer.

2. The company has no right to refuse a new meter because its employees decide *ex parte* that the old meter which they removed had been injured through the consumer's fault, and the latter denies the charge.

3. The question of damage *vel non,* and its extent, is one which neither can decide alone and which must be solved by a proper investigation, judicial or non-judicial, as the parties may elect.

4. To insist upon pre-payment of alleged damage, as a condition precedent to continuing a consumer's gas supply, is unjust, arbitrary and

oppressive, and such a contention will not be tolerated by Courts of justice.

5. The charter of the company does not clothe it with judicial authority to decide its own claims in its own favor and *audi alteram partem* is of the essence of fair dealing.

DUFOUR, J. Relatrix seeks by mandamus to compel respondent to furnish her gas for both lighting and fuel purposes upon her paying therefor at the customary rates.

She alleges that she had up to October 20th, 1904, at her residence, 417 South Dupre St., a gas meter which, on that day, was removed without cause by the respondent, and that the latter refuses to furnish her with a gas meter and a gas supply.

Respondent justifies the removal of the meter on the ground that it had been tampered with and injured, and asserts that relatrix forfeited her right to demand the use of any gas meter unless the damage alleged to have caused was paid for.

It is also averred that the application made for a meter after the removal was withdrawn and has never been renewed.

The salient pertinent facts are substantially as follows:

Relatrix lived on Montegut streets, and used gas there; she then moved to her present residence, to which place the mains of the respondent had not yet been extended. The extension was made at the solicitation of an agent of the company, who obtained gas contracts from the residents, in the number, the relatrix.

A written application signed "Miss Graff" was given by the solicitor to the company, and on the strength of it, a prepaid meter was installed at her residence. The solicitor says, he thinks she signed the application, but she denies having done so; but she used the gas for fuel until the removal of the meter.

The prepaid meter is an automatic instrument which, upon the dropping of a coin, passes gas as required to the extent of the

270

value of the coin. The damage complained of was of a nature which, according to respondent, enabled the consumer to withdraw the coins that had been inserted after the gas had been used.

The relatrix insists that she did not tamper with the meter, and the inspector insists that he found it damaged. It is admitted, however, that the withdrawal of the coins would not affect the reading of the meter, which would still show how much gas had been used, and would still afford a proper basis for the charge.

It is further shown that no disparity has ever been found between the amount of money she put in and the value of the amount of gas she consumed.

The respondent is a quasi-public corporation, holding a franchise giving it the exclusive right to vend gas, and compelling it to furnish the same to all parties who may choose to contract for it.

It is undeniable that the company has the right to protect itself by enacting reasonable stipulations in the contract, but it is equally true that it must have due regard for the rights and convenience of the consumer.

The regulations contained in the application, that the meter may be changed, if found defective, and that the subscriber "will insure the company against loss of the meter or injury thereto by carelessness and accident and will deposit with the company from time to time such sums of money as may be required as continuing security for the performance of the obligations of the subscriber," are reasonable.

But nowhere do we find any warrant for refusing a new meter or shutting off the gas because the defendant or its employees *ex parte* decide that the meter has been injured, when the consumer denies that she was guilty of any fault. The question of damage *vel non* and its extent is one which neither party can decide alone,

271

and which must be solved by a proper investigation, judicial or non-judicial as the parties may elect.

To insist upon pre-payment of alleged damage as a condition precedent to continuing the gas supply is unjust, arbitrary and oppressive, and such a claim will not be tolerated by a Court.

The charter of the respondent does not clothe it with judicial authority to decide its own claims in its own favor. *Audi alteram partem* is of the essence of fair dealing.

If we accept the theory that Miss Graff signed the application referred to in the answer, there is a contract, and respondent, under its terms, could not refuse meter and gas without violating it, until the validity of its claim was established. If, on the other hand, we accept the theory that there was no contract, relatrix could be held for the damage to the meter only by virtue of Art. 2315, R. C. C., and the rules or customs of the gas company cannot properly be injected into the matter.

The relation of the user of gas by sufferance and without contract with the company would necessarily be akin to that of a stranger to a contract who committed a trespass, so far as concerns the company's right to redress.

It is stated by respondent that the rules require a written application, and that the one presented in behalf of the relatrix by her brother after removal of the meter was subsequently withdrawn. Conceding this, the testimony satisfies us that the new meter was not denied for lack of application, but because she refused to pay the amount of damage to the old meter, which she denied having caused.

This is conclusively shown by the statement of Miller, manager, who testifies as follows:

"Q. Do I understand that your company refused to furnish gas to Miss Graff, even though she would make a deposit to get an ordinary meter?

"A. Unless she would acknowledge the indebtedness caused by that damage, we will persist in refusing to supply her gas, unless she would admit that liability, which would come from the deposit.

"Q. And you would refuse to give her even an ordinary meter?

"A. Refuse any kind of a meter, unless the obligation existing was recognized."

Such a declaration amounts to duress and shows that any renewal of application by relatrix would have been a vain and futile act when she became advised of respondent's determination.

At the argument, a suggestion was made that we had no jurisdiction in the premises, the allegations of the petition are that petitioner has been damaged to the extent of $400.00, and we are not warranted in the assumption that deprivation of the use of the meter did not injure her to an extent commensurate with at least the minimum limit of our jurisdiction in appeals from the District Court.

In accordance with the foregoing views and with the precedent in Kells vs. N. O. Gas Light Co., we shall render such a judgment as will protect the respective rights of the parties.

Judgment appealed from is reversed, and it is now ordered that respondent, upon application in the usual form by relatrix, do furnish meters and gas for both lighting and fuel purposes upon the usual terms, and without pre-payment by relatrix the amount of damage claimed by respondent for injury to the removed meter, and leaving such claim to be settled in proper proceedings contradictorily taken, costs of both courts to be paid by respondent.

April 19th, 1905.

## On Rehearing.

DUFOUR, J. The following application for a rehearing has been filed by respondent:

"The petition of the New Orleans Lighting Co., defendant and appellee herein, with respect shows that it is informed and be-

lieves that there is error in the opinion and decree of this Honorable Court herein rendered, to its prejudice, and it prays for a rehearing on the grounds, to-wit:

"1. That the Court erred in its appreciation of the facts attending the removal of the meter from the premises of relatrix, especially in this, that it seems to attach importance and effect to the condition, that the evidence does not conclusively show that the meter was damaged by her; appellee contends that that is immaterial, and that the fact that the meter was uninjured in a substantial manner justifies action by the defendant company in its removal without regard to who or what may have been the actual cause of injury.

"2. The meter being damaged in an essential particular the removal of that meter was justified.

"3. Petitioner accepts the main conclusion of the Court in this case, under the record before it, that a demand for the payment of damages made for injury to the meter may not be insisted on as a condition precedent to the installation of a meter and delivery of gas, but petitioner respectfully submits that the reasoning of this Honorable Court is too broad and comprehensive in its scope, with the effect that it practically deprives the defendant of the control of its business and places it at the mercy of the consumer.

"4. Finally, the decree rendered is contrary to law and the evidence in this, that in the nature of the business and the evidence in the record, it appears that meters are installed and gas furnished on the written application of the intended consumer, and such application constitutes the basis for contract between the parties, and no such application was ever made, and mandamus should not issue to compel the performance of a duty, unless it is alleged and shown that all the conditions precedent, on which the obligation to perform the duty arises, have been complied with.

"5. The point on which his Honor, the trial judge, decided the case was not a surprise to relatrix; it was made and presented

during the progress of the trial and in argument, and counsel for relatrix insisted that his position was that his client was entitled to a restoration of the status *quo ante*, although relatrix denied she had ever applied to have a meter in her premises.

"6. The judgment, in fact, does not order the defendant to install a meter under the conditions disclosed in the record, but on condition that an application be made by relatrix and the condemnation of defendant to pay the costs of Court in both cases is, under the circumstances, unfair, unequitable and unjust.

"7. The statement of an employee of the corporation, as to what he would or might do or not do under certain curcumstances cannot be made the basis of a judicial decree until he is called on and has acted; besides the question on that subject first put to the witness was objected to and objection sustained.

"8. This Honorable Court erred in its construction of and application to this case of the case of State ex. rel. Kells vs. the Company."

As to the first and second points, we need merely say that the Court did not decide that the old meter could not be removed; but held that a new meter should have been put in.

The third point is acquiesced in in the following language of the brief:

"We beg to say at the outset we submit to the conclusion of law reached by the Honorable Court, that a claim for damages to the meter cannot be insisted upon as a condition precedent to the installation of a new meter."

In answer to the points numbered 4, 5, 6 and 7, we held that there was no need of an application, when it appeared, that the company had refused to put in a new meter unless payment of the damage claimed was first made. The application is in the nature of a putting in default, and a refusal to install the meter was in the nature of a refusal to comply, even if an application were made, and as such became a waiver of default.

275

Counsel are mistaken in their statement that objection to the testimony on this point was made and sustained; the objection was made after the questions had been answered, and the trial judge so states.

As to the 7th point, we did not err in our contention and application of the Kells case.

There, although the judgment given below was in favor of plaintiff and was amended by the Supreme Court, the costs of the lower Court were fastened on the defendant.

The theory upon which this proceeds is, that no one who, by his improper and illegal act, drives another to Court for redress, can indirectly mulct him in damages for seeking judicial relief by the assertion of a well founded right. To hold otherwise would place poor consumers at the mercy of the company and decision of questions of right would result in favor of the long purse.

Rehearing refused.